IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

DAVID WESLEY,

                        Plaintiff,                      Civil Action No.
                                                            9:08-CV-0953 (NAM/DEP)

       vs.

NANCY O'CONNOR-RYERSON

                        Defendant.

--------------------------------------------------------------

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

DAVID WESLEY
*Plaintiff, Pro Se*
07-A-4840
P.O. Box 618
Auburn, New York 13021

FOR DEFENDANTS:

HON. ANDREW M. CUOMO         RICHARD LOMBARDO, ESQ.
Office of the Attorney General      Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff David Wesley, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In his

complaint, which is exceedingly simple and straightforward, plaintiff asserts

that the named defendant, identified as a nurse practitioner at the facility in

which plaintiff was confined at the relevant times, was deliberately

indifferent to his serious medical needs by failing to treat symptoms

complained of by Wesley during sick call and ordering that his prescription

medication for Lupus be discontinued.  As relief, plaintiff's complaint

requests an award of compensatory and punitive damages totaling

$20,000.

    Defendant has responded to plaintiff's complaint by seeking its

dismissal for failure to state a claim upon which relief may be granted.  In

her motion, defendant asserts that plaintiff's allegations fail to support an

Eighth Amendment deliberate indifference claim, and in any event she is

entitled to qualified immunity from suit.  Defendant also maintains that if the

action should go forward, plaintiff's claims against her in her official

capacity are subject to dismissal on the basis of the Eleventh Amendment.

    Having carefully considered the arguments asserted in defendant's

motion, which plaintiff has opposed, I recommend that it be granted only to

the extent of dismissing plaintiff's claims against the defendant in her

2

official capacity, but that it otherwise be denied subject to defendant's right to reassert the arguments now presented at a later stage in the proceedings.

I.    BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"); at the time the events upon which his claim is predicated occurred, Wesley was designated to the Auburn Correctional Facility ("Auburn"), located in Auburn, New York.  Complaint (Dkt. No. 1) ¶ 2.

Plaintiff, who suffers from several diagnosed medical conditions including Lupus, attended emergency sick call at Auburn on June 7, 2008, complaining of various symptoms including dizzy spells, blurred vision, and skin irritation.  Complaint (Dkt. No. 1) ¶¶ 4, 5.  Plaintiff was seen on that occasion by a prison nurse, who placed Wesley on two days of medical restriction and advised him to attend regular sick call.  *Id*. ¶ 6.  Plaintiff followed that advice and appeared for sick call on June 9, 2008, at which time he was seen by another nurse at the facility, and was told that the

_____

[1]  In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

defendant, a nurse practitioner at the facility, had determined his symptoms were of no real concern.  *Id*. ¶ 8.

At some time not specified in plaintiff's complaint, the defendant also discontinued plaintiff's prescription for Prednisone, previously administered for his Lupus.  Complaint (Dkt. No. 1) ¶ 9.  Plaintiff asserts that as a result of being deprived of that medication he suffered from "substantial pain all over his body, ...".  *Id*. ¶ 9.

II.   <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on September 9, 2008.  Dkt. No. 1.  Plaintiff's complaint names a single individual, Nurse Practitioner Nancy O'Connor-Ryerson, as a defendant, indicating that she is sued both individually and in her official capacity, and sets forth a single cause of action alleging deliberate indifference to his medical needs, in violation of the Eighth and Fourteenth Amendments. [2]  *Id*.

Following service of process, in lieu of filing an answer defendant moved on November 17, 2008 for dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state

---

[2]     In his papers in opposition to defendant's motion, plaintiff seemingly expands his deliberate indifference claim to also address a failure to diagnosis him as suffering from diabetes.  *See e.g.* Plaintiff's Memorandum (Dkt. No. 10) at 2-3.  As currently constituted, however, plaintiff's complaint does not include a cause of action based upon that allegedly failed diagnosis. *See Liscio v. Warren*, 901 F.2d 274 (2d Cir. 1990).

a claim upon which relief may be granted.  Dkt. No. 9.  In her motion,

defendant O'Connor-Ryerson asserts that plaintiff's allegations fail to

support a claim of constitutional significance, and that in any event she is

entitled to Eleventh Amendment immunity from suit in her official capacity,

and qualified immunity shielding her from liability in all respects.  *Id.*  In

papers filed with the court on December 10, 2008, Dkt. No. 10, plaintiff has

since responded in opposition to defendant's motion, which is now ripe for

determination and has been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. 636(b)(1)(B) and Northern District

of New York Local Rule 72.3(c).  *See* Fed.R.Civ.P. 72.3.

III.   DISCUSSION

      A.   Dismissal Motion Standard

      A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, calls upon a court to gauge the facial

sufficiency of that pleading, utilizing as a backdrop a pleading standard

which, though unexacting in its requirements, "demands more than an

unadorned, the-defendant-unlawfully-harmed me accusation" in order to

withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937,

1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127

S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure

requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*

While modest in its requirement, that rule commands that a complaint

contain more than mere legal conclusions; "[w]hile legal conclusions can

provide the framework of a complaint, they must be supported by factual

allegations."  *Ashcroft,* 2009 WL 1361536, *13.

To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its

face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing

*Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).  As the Second Circuit has

observed, "[w]hile *Twombly* does not require heightened fact pleading of

specifics, it does require enough facts to 'nudge [plaintiffs'] claims across

the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502

F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570 127 S. Ct. at

1974).

### B.   Plaintiff's Claim Against Defendant In Her Official Capacity

In her motion defendant argues that to the extent plaintiff seeks to

recover money damages in her official capacity, her claim is precluded

under the Eleventh Amendment.  Plaintiff seemingly acknowledges as

much in his opposition papers, requesting only that his claim against the

6

defendant for money damages in her individual capacity be preserved.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.[3] *Richards v. State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh, 98 S. Ct. at 3057-58* and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)). "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[4] *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361-62 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct.

---

[3]      In a broader sense, this portion of defendant's motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of N. Y. v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

[4]      By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364.

3099, 3105-06 (1985).

Since plaintiff's damage claim against the named defendant in her official capacity is in reality a claim against the State of New York, thus exemplifying one against which the Eleventh Amendment protects, it is subject to dismissal.  *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend this portion of defendant's motion be granted, and that plaintiff's damage claim against the defendant in her capacity as a state employee be dismissed.

C.    Plaintiff's Claim Against the Defendant In Her Individual
      Capacity

In addition to suing the defendant in her official capacity, plaintiff asserts that she is individually liable for her deliberate indifference to his serious medical needs.  Arguing that plaintiff's indifference claim represents nothing more than an outgrowth of his disagreement with medical officials at Auburn over the care and treatment which he received at the facility, defendant maintains that the claim is legally deficient and should be dismissed on the merits.

Claims that prison officials have intentionally disregarded an inmate's medical needs are encompassed within the Eighth Amendment's prohibition of cruel and unusual punishment.  *Hathaway v. Coughlin*, 37

8

F.3d 63, 66 (2d Cir. 1994)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111

S. Ct. 2321, 2324 (1991)).  The Eighth Amendment's prohibition of cruel

and unusual punishment encompasses punishments that involve the

"unnecessary and wanton infliction of pain" and are incompatible with "the

evolving standards of decency that mark the progress of a maturing

society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290,

291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct.

1076, 1084 (1986) (citing, *inter alia, Estelle*, 429 U.S. at 103, 97 S. Ct. at

290).  While the Eighth Amendment does not mandate comfortable

prisons, neither does it tolerate inhumane treatment of those in

confinement; thus the conditions of an inmate's confinement are subject to

Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114

S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349,

101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment

must satisfy both an objective and subjective requirement – the conditions

must be "sufficiently serious" from an objective point of view, and the

plaintiff must demonstrate that prison officials acted subjectively with

"deliberate indifference".  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546

(N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson*, 501 U.S. 294, 111 S. Ct. 2321

(1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2
(N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (citations omitted).

### 1.   Serious Medical Need

In order to state a medical indifference claim under the Eighth
Amendment, a plaintiff must first allege a deprivation involving a medical
need which is, in objective terms, "'sufficiently serious'".  *Hathaway v.
Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson*, 501 U.S. at 298,
111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S.
1154, 115 S. Ct. 1108.  A medical need is serious for constitutional
purposes if it presents "'a condition of urgency' that may result in
'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702
(2d Cir. 1998) (citations omitted).  A serious medical need can also exist
where "'failure to treat a prisoner's condition could result in further
significant injury or the unnecessary and wanton infliction of pain'"; since
medical conditions vary in severity, a decision to leave a condition
untreated may or may not be unconstitutional, depending on the facts*.
Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter
alia*, *Chance*, 143 F.3d at 702).  Relevant factors informing this
determination include whether the plaintiff suffers from an injury that a
"'reasonable doctor or patient would find important and worthy of comment

10

or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'"  *Chance*, 143 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

In this instance, given the fact that the action is in its formative stages, little is known about the extent of plaintiff's medical condition, including the severity of his apparently-diagnosed Lupus.  Wesley does assert that without the benefit of his Prednisone for that condition, he has experienced substantial pain.  Complaint (Dkt. No. 1) ¶ 9.  Drawing all inferences and resolving all ambiguities in his favor, the court is unable to say at this early procedural juncture that plaintiff's Lupus could not under any circumstance be regarded as a serious medical need.[5]

### 2. Deliberate Indifference

In addition to establishing the existence of a serious medical need, a plaintiff hoping to prevail on a deliberate medical indifference claim under the Eighth Amendment must also establish the subjective indifference on

---

[5]     At least one court has suggested that Lupus is a serious medical condition and acknowledged that delay in treatment, or no treatment at all, would likely cause lasting injury and undue suffering.  *Baez v. Dep't of Corrections*, Civil Action 2:06-CV-04923, 2009 WL 1183910, at *7 (E.D. Pa. May 4, 2009).

the part of one or more of the defendants to that condition. *Leach*, 103

F.Supp. 2d at 246.  Deliberate indifference, in a constitutional sense, exists

if an official "knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he [or

she] must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at

1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer,* 511 U.S. at 837, 114

S. Ct. at 1979); *Waldo*, 1998 WL 713809, at *2 (citations omitted).

Undeniably, as defendant has noted, the Eighth Amendment does

not afford prisoners a right to medical treatment of their choosing; the

question of that diagnostic techniques and treatments should be

administered to address an inmate's medical condition is a "classic

example of a matter for medical judgment" and, accordingly, prison medical

personnel are vested with broad discretion to determine what method of

care and treatment to provide to their patients.  *Estelle*, 429 U.S. at 107, 97

S. Ct. at 293; *Chance*, 143 F.3d at 703 (citation omitted); *Rosales v.

Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998) (citation omitted).  It is

not altogether clear, however, based upon the extremely limited record

now before the court, that plaintiff's complaints stem from nothing more

than a disagreement over a course of his treatment.

Resolving all ambiguities and drawing all inferences in plaintiff's

favor, it could be argued that Nurse Practitioner O'Connor-Ryerson

purposely withheld plaintiff's Prednisone medication, prescribed either by

herself or some other medical official at the prison, for malicious reasons

rather than as a result of a medically appropriate decision.  Pending the

development of a more robust record, following which the matter could

perhaps be addressed again on motion for summary judgment, the court is

unable to say with the requisite certainty that plaintiff has not stated a

plausible claim of deliberate subjective indifference on the part of

defendant to his serious medical needs.  I therefore recommend that the

portion of defendant's motion urging dismissal of plaintiff's medical

indifference claims on the merits be denied.

  C. <u>Qualified Immunity</u>

Qualified immunity shields government officials performing

discretionary functions from liability for damages "insofar as their conduct

does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457

U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted).

Accordingly, governmental officials sued for damages "are entitled to

qualified immunity if 1) their actions did not violate clearly established law,

or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143,152 (2d Cir. 2007), *rev'd on other grounds, Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (May 18, 2009). The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions. *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001); *Warren*, 196 F.3d at 332. As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir. 1972)).

Until recently, it was generally agreed that a proper qualified immunity analysis entailed a three step inquiry. *Harhay v. Town of*

*Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003).  As a threshold matter a court considering the issue was charged with first determining whether, based upon the facts alleged, the plaintiff had facially established a constitutional violation.  *Id.*; *Gilles v. Repicky*, 511 F.3d 239, 243-44 (2d Cir. 2007).  If the answer to this inquiry was in the affirmative, then the focus turned to whether the right in issue was clearly established at the time of the alleged violation.  *Id.*  (citing *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001));  *see also Poe v. Leonard*, 282 F.3d 123, 132-33 (2d Cir. 2002).  Finally, upon determining that the plaintiff had a clearly established, constitutionally protected right which was violated, the court next considered whether it was nonetheless objectively reasonable for the defendant to believe that his or her action did not abridge that established right.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133 (quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting, in turn, *Salim*, 93 F.3d at 89)).

The United States Supreme Court recently had the opportunity to reconsider the analysis prescribed by *Saucier*, holding that while the sequence of the inquiry set forth in that case is often appropriate, it should no longer be regarded as compulsory.  *Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808, 2009 WL 128768, at \*9 (Jan. 21, 2009).  In *Pearson*, the

Court reasoned that while the *Saucier* protocol promotes the development of constitutional precedent and is "especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable," the rigidity of the rule comes with a price. *Id.* at *10.  The inquiry often wastes both scarce judicial and party resources on challenging questions that have no bearing on the outcome of the case.  *Id.*  Given that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Court opined that the algorithm prescribed by *Saucier* may serve to defeat this goal by requiring the parties "to endure additional burdens of suit – such as the cost of litigating constitutional questions and delays attributable to resolving them – when the suit otherwise could be disposed of more readily."  *Id*. (quotations and citations omitted).

As a result of its reflection on the matter, the *Pearson* Court concluded that because the judges of the district courts and courts of appeals "are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the . . .  prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the

16

particular case at hand." *Id.* at *9.  In other words, as recently emphasized

by the Second Circuit, the courts "are no longer *required* to make a

'threshold inquiry' as to the violation of a constitutional right in a qualified

immunity context, but we are free to do so." *Kelsey v. County of*

*Schoharie*, ___ F.3d ___, 2009 WL 1424206, at * 6 (citing *Pearson*, 129 S.

Ct. at 821) (emphasis in original).  "The [*Saucier* two-step] inquiry is said to

be appropriate in those cases where 'discussion of why the relevant facts

do not violate clearly established law may make it apparent that in fact the

relevant facts do not make out a constitutional violation at all.'" *Id.* (quoting

*Pearson*, 129 S. Ct. at 818).

Having carefully considered the record now before the court, I

conclude that the court is not well-positioned at this early stage to dismiss

plaintiff's claims on the basis of qualified immunity.  While plaintiff's

complaint is spartan, and the allegations against defendant O'Connor-

Ryerson are set forth in only the barest of terms, it cannot be determined at

this juncture that defendant O-Connor-Ryerson did not purposely and

intentionally withhold prescription medication from plaintiff for

impermissible reasons, intending to cause him resulting harm or, at a

minimum, reasonably knowing that harm could come to plaintiff.  Under the

circumstances, the court is unable to say that it was reasonable, consistent

with well-established Supreme Court case law, for defendant to withhold

medication from plaintiff.  I therefore recommend against a finding of

qualified immunity, with leave to defendant to raise the issue at a future

point when it can be analyzed with the benefit of a more complete record to

determine whether defendant was reasonable in her belief that she was not

violating clearly established Supreme Court law when taking the action

now complained of.  *See Beeks v. Reilly*, No. 07-CV-3865, 2008 WL

3930657, at *8 (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir.

2004)).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Consistent with the relaxed notice pleading requirements of the

governing procedural rules, plaintiff has alleged that defendant was

deliberately indifferent to his serious medical needs, identifying that need,

the basis for his claim that defendant was deliberately indifferent to that

need, and the resulting effects.  Drawing all inferences and resolving all

ambiguities in favor of the plaintiff, I am unable to conclude at this early

stage that plaintiff has not stated a plausible medical indifference claim

sufficient to establish a violation of the Eighth Amendment.  Similarly, I am

unable to conclude based upon the facts now on the record that the

defendant was reasonable in her belief that her actions did not violate

clearly established Supreme Court law.  I do agree with the defendant, however, that the plaintiff's claim against her in her official capacity is subject to dismissal on the basis of the Eleventh Amendment, and plaintiff does not appear to contest this portion of defendant's motion.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED, that defendant's motion to dismiss (Dkt. No. 9) be GRANTED, in part, and that plaintiff's claim against defendant in her official capacity be DISMISSED, but that the motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the clerk of the court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the clerk of the court serve a copy of this report, and recommendation upon the parties in accordance with this court's local rules.

Dated:      June 4, 2009
          Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

19